IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BRYAN EUGENE MILLER,

        Plaintiff,

vs.                           Case No. 13-1341-SAC

CAROLYN W. COLVIN,
Acting Commissioner of
Social Security,

        Defendant.


MEMORANDUM AND ORDER

This is an action reviewing the final decision of the Commissioner of Social Security denying the plaintiff disability insurance benefits and supplemental security income payments. The matter has been fully briefed by the parties.

**I. General legal standards**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The court should review the Commissioner's decision to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by

1

such evidence that a reasonable mind might accept to support the conclusion.  The determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it really constitutes mere conclusion.  Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).  Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted.  Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational.  Graham v. Sullivan, 794 F. Supp. 1045, 1047 (D. Kan. 1992).  The court should examine the record as a whole, including whatever in the record fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met.  Glenn, 21 F.3d at 984.

The Social Security Act provides that an individual shall be determined to be under a disability only if the claimant can establish that they have a physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity (SGA).  The claimant's physical or mental impairment or impairments must be of such severity that

they are not only unable to perform their previous work but cannot, considering their age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential evaluation process to determine disability.  If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further.  At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity."  At step two, the agency will find non-disability unless the claimant shows that he or she has a "severe impairment," which is defined as any "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities."  At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled.  If the claimant's impairment does not meet or equal a listed impairment, the inquiry proceeds to step four, at which the agency assesses whether the claimant can do his or her previous work; unless the claimant shows that he or she cannot perform their previous work, they are determined not to be disabled.  If the claimant survives step four, the fifth and final step

requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. Barnhart v. Thomas, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. Nielson v. Sullivan, 992 F.2d 1118, 1120 (10th Cir. 1993). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. Nielson, 992 F.2d at 1120; Thompson v. Sullivan, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. Thompson, 987 F.2d at 1487.

Before going from step three to step four, the agency will assess the claimant's residual functional capacity (RFC). This RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. §§ 404.1520(a)(4), 404.1520(e,f,g); 416.920(a)(4), 416.920(e,f,g).

## II. History of case

June 22, 2012, administrative law judge (ALJ) Alison K. Brookins issued her decision (R. at 363-375).[1] Plaintiff alleges that he had been disabled since July 26, 2004 (R. at 363). Plaintiff meets the insured status requirements for social

---

[1] This is the 2nd ALJ decision. The 1st decision was reversed and remanded by this court on November 19, 2010 (R. at 395-408).

security disability benefits through December 31, 2004 (R. at 366). At step one, the ALJ found that plaintiff did not engage in substantial gainful activity since the alleged onset date (R. at 366). At step two, the ALJ found that plaintiff had the following severe impairments since July 26, 2004: degenerative disc disease of the lumbar spine. As of December 17, 2007, claimant had the following severe impairments: degenerative disc disease of the lumbar spine, major depressive disorder, and generalized anxiety disorder (R. at 366). At step three, the ALJ determined that plaintiff's impairments prior to December 17, 2007 do not meet or equal a listed impairment (R. at 367). After determining plaintiff's RFC prior to December 17, 2007 (R. at 367), the ALJ determined at step four that plaintiff is unable to perform past relevant work (R. at 370). At step five, the ALJ found that plaintiff, prior to December 17, 2007, can perform jobs that exist in significant numbers in the national economy (R. at 371). Beginning on December 17, 2007, plaintiff's impairment was found to meet a listed mental impairment, 12.04 (affective disorders) (R. at 372). The ALJ therefore found that plaintiff was not disabled prior to December 17, 2007, but became disabled on that date and has continued to be disabled through the date of the decision (R. at 374-375).

**III. Did the ALJ err in setting the onset date for plaintiff's disability as December 17, 2007?**

Social Security Ruling (SSR) 83-20 sets forth the policy and describes the relevant evidence to be considered when establishing the onset date of disability. 1983 WL 31249 at *1. Once published, Social Security Rulings are binding on all components of the Social Security Administration. 20 C.F.R. § 402.35(b)(1). Factors relevant to the determination of disability onset include the individual's allegations as to when the disability began, the work history, and the medical evidence. SSR 83-20, 1983 WL 31249 at *1; Reid v. Chater, 71 F.3d 372, 373-374 (10th Cir. 1995). These factors are often evaluated together to arrive at the onset date. However, the individual's allegation or the date of work stoppage is significant in determining onset only if it is consistent with the severity of the condition(s) shown by the medical evidence. SSR 83-20, 1983 WL 31249 at *1. In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence available. 1983 WL 31249 at *3.

With slowly progressing impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. Determining the proper onset date can be particularly difficult when adequate medical

6

records are not available. In such cases, it will be necessary to infer the onset date. 1983 WL 31249 at *2. In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment occurred some time prior to the date of the first recorded medical examination. 1983 WL 31249 at *3. Ruling 83-20 thus recognizes that it sometimes may be necessary to infer the onset date. The ALJ then should call on the services of a medical advisor at the hearing. A medical advisor need be called only if the medical evidence of onset is ambiguous. Reid, 71 F.3d at 374. If the medical evidence is ambiguous and a retroactive inference is necessary, SSR 83-20 requires the ALJ to call upon the services of a medical advisor to insure that the determination of onset is based upon a legitimate medical basis. Blea v. Barnhart, 466 F.3d 903, 911 (10th Cir. 2006); Grebenick v. Chater, 121 F.3d 1193, 1200-1201 (8th Cir. 1997).

The onset date should be set on the date when it is most reasonable to conclude from the evidence that the impairment was sufficiently severe to prevent the individual from engaging in substantial gainful activity for a continuous period of at least 12 months or result in death. Convincing rationale must be given for the date selected. SSR 83-20, 1983 WL 31249 at *3.

Where medical evidence of onset is ambiguous, an ALJ is obligated to call upon the services of a medical advisor. In

the absence of clear evidence documenting the progression of the claimant's condition, the ALJ does not have the discretion to forgo consultation with a medical advisor. Blea, 466 F.3d at 911-912.

In his decision of November 19, 2010, Judge Lungstrum held that the medical evidence was ambiguous regarding the precise date that plaintiff's impairments became disabling. The case was remanded in order to determine the onset date, and the Commissioner was advised to utilize the services of a medical advisor to determine the onset date (R. at 407).

Plaintiff believes the ALJ erred by not giving controlling or significant weight to the opinions of plaintiff's treating physician, Dr. Merkel. In a statement dated December 17, 2007, Dr. Merkel opined that plaintiff was extremely limited in all mental categories and could not work. Dr. Merkel further opined that plaintiff had these limitations since 1997 (R. at 255-257). Dr. Merkel also prepared a physical RFC assessment on the same date in which he opined that plaintiff could sit, stand and/or walk for less than 1 hour at a time, and further opined that plaintiff could never use his right hand to reach, handle, finger, feel or push/pull (R. at 258-263).

On remand, the ALJ complied with the order of the court, and consulted a with medical advisor regarding the onset date. The ALJ had Dr. Hymoff, a psychologist, complete a mental RFC

8

assessment on the plaintiff. Dr. Hymoff opined that plaintiff had numerous moderate and marked impairments and met a listed impairment as of January 15, 2008 (R. at 476-484). Dr. Hymoff reviewed the medical records and opined that plaintiff's impairments did not meet the level of a listed impairment until plaintiff's hospitalization on January 15, 2008 (R. at 478-480).[2]

The ALJ accorded substantial weight to the opinions of Dr. Hymoff, finding it well supported by the evidence and consistent with the record as a whole (R. at 373). The ALJ also evaluated Dr. Merkel's opinion, dated December 17, 2007, in which he found that plaintiff had extreme mental limitations that existed since 1997. The ALJ accorded little weight to this opinion for a number of reasons (R. at 373-374).

First, the ALJ stated that plaintiff himself did not allege that his disability extends back this far (R. at 373). Plaintiff is only alleging an onset of disability as of July 26, 2004 (R. at 363). In a psychological evaluation performed on June 14, 2006 (R. at 208-210), plaintiff stated to Dr. Schwartz that his disability stems from an on-the-job injury; he denied any other disability. He specifically denied depression, and denied that anxiety is much of a problem, although he does get

---

[2] Although Dr. Hymoff's report gives a date of January 5, 2008 as the onset date, and the date of plaintiff's hospitalization at Larned State Hospital, plaintiff was admitted to Larned State Hospital on January 15, 2008 (R. at 308). Both the ALJ and defendant believe Dr. Hymoff intended January 15, 2008 to be the onset date (R. at 373, Doc. 22 at 11), and plaintiff does not dispute that Dr. Hymoff intended January 15, 2008 to be the onset date.

9

nervous at new jobs; he minimized any emotional problems (R. at 208, 366).

Second, the ALJ stated that there was no medical evidence (other than opinions of Dr. Merkel) indicating that plaintiff's mental impairments were severe, much less disabling, prior to the established onset date (R. at 366-367, 373). Dr. Schwartz, on June 14, 2006, opined that plaintiff can remember work locations and procedures and understand and follow simple instructions, and has adequate attention, concentration and short-term memory. Dr. Schwartz stated that he did not detect any severe psychiatric symptoms which would prevent him from working (R. at 209, 366-367). The ALJ gave substantial weight to the opinion of Dr. Fantz, who opined on June 23, 2006 that plaintiff did not have a severe mental impairment (R. at 224-236, 370). Dr. Hymoff opined that plaintiff's limitations were found to be moderate or marked only as of January 15, 2008 (R. at 476-477).

Third, the ALJ noted that plaintiff had worked at the level of substantial gainful activity as late as 2001. The ALJ found this to be plainly inconsistent with Dr. Merkel's opinion that plaintiff had extreme mental limitations as far back as 1997 (R. at 373-374).

Although the ALJ gave substantial weight to the opinion of Dr. Hymoff, the ALJ found a slightly earlier onset date of

December 17, 2007, which is the earliest occasion in plaintiff's treatment records where significant deterioration in his mental health is documented (R. at 373). On that date, Dr. Merkel stated that plaintiff had been having a lot of depression. Dr. Merkel's record states that plaintiff is disabled from the standpoint of his back and from depression and probably some mental problems (R. at 239).

The court will not reweigh the evidence or substitute its judgment for that of the Commissioner. Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005); White v. Barnhart, 287 F.3d 903, 905, 908, 909 (10th Cir. 2002). Although the court will not reweigh the evidence, the conclusions reached by the ALJ must be reasonable and consistent with the evidence. See Glenn v. Shalala, 21 F.3d 983, 988 (10th Cir. 1994)(the court must affirm if, considering the evidence as a whole, there is sufficient evidence which a reasonable mind might accept as adequate to support a conclusion). The court can only review the sufficiency of the evidence. Although the evidence may support a contrary finding, the court cannot displace the agency's choice between two fairly conflicting views, even though the court may have justifiably made a different choice had the matter been before it de novo. Oldham v. Astrue, 509 F.3d 1254, 1257-1258 (10th Cir. 2007).

The ALJ utilized a medical expert to determine plaintiff's onset date based on his mental limitations, and gave significant weight to his opinion. The ALJ also gave specific and legitimate reasons for discounting the opinion of Dr. Merkel that plaintiff's mental limitations were extreme going back to 1997. Both Dr. Schwartz and Dr. Fantz opined in 2006 that plaintiff did not have severe mental impairments at that time.

The ALJ gave substantial weight to the opinions of Dr. Hymoff, and gave little weight to the opinions of Dr. Merkel regarding the onset date based on his mental limitations. The court will not reweigh the evidence. However, the ALJ tempered the onset date to an earlier date, December 17, 2007, based on Dr. Merkel's treatment notes for that date. An ALJ does not commit reversible error by tempering medical opinions given substantial weight by the ALJ for the claimant's benefit. The ALJ does not have to provide an explanation for extending the claimant such a benefit. Chapo v. Astrue, 682 F.3d 1285, 1288 (10th Cir. 2012). The court finds that substantial evidence in the record supported the ALJ's finding that plaintiff's onset date based on his mental limitations was December 17, 2007.

Regarding plaintiff's physical limitations, Dr. Merkel made a physical RFC assessment on December 17, 2007 (R. at 258-263). The ALJ only accorded this opinion partial weight (R. at 370). Dr. Merkel had opined that plaintiff could sit, stand and/or

12

walk for less than 1 hour at a time, and further opined that plaintiff could not use his right hand to reach, handle, finger, feel or push/pull (R. at 258-263). The ALJ found that the limitations on walking, standing and sitting were out of all proportion to the mild degenerative changes in the lumbar spine. As for the manipulative limitation in the use of the right hand, the ALJ found that the medical record does not provide any support for an impairment that would affect plaintiff's use of his right hand (R. at 370).

The ALJ gave substantial weight to the opinions of Dr. Parsons, who prepared a physical RFC assessment on June 22, 2006 (R. at 369-370, 214-221). Dr. Parsons reviewed and discussed the medical records (R. at 221). He found that plaintiff could sit for 6 hours and stand/walk for 6 hours in an 8 hour workday (R. at 215). He did not find any manipulative limitations (R. at 217). The ALJ gave little weight to the medical expert, Dr. Axline, who opined that plaintiff could perform medium work. The ALJ believed that Dr. Parson's limitation to light work was more consistent with plaintiff's long-standing history of low back pain (R. at 370). Dr. Axline performed a physical RFC assessment on November 21, 2011 (R. at 486-494). He opined that plaintiff could sit for 6 hours, walk for 6 hours, and stand for 4 hours in an 8 hour workday (R. at 490). He found no

manipulative limitations in the use of plaintiff's hands (R. at 491).

The ALJ gave specific and legitimate reasons for discounting some of Dr. Merkel's opinions regarding plaintiff's physical limitations. The opinions of Dr. Merkel that were discounted by the ALJ were not supported by Dr. Parsons or Dr. Axline. Plaintiff does not cite to any other medical evidence that would support such limitations. The court will not reweigh the evidence. The court finds that substantial evidence supports the ALJ's physical RFC findings.

Plaintiff also alleges error by the ALJ in not considering an opinion by Dr. Manguoglu in 2006 that plaintiff was disabled. On May 19, 2006, a medical treatment record, under "SUBJECTIVE," states that "He has been reportedly told by Dr. Manguoglu that he should be disabled" (R. at 244). On July 28, 2006, the treatment record, under "SUBJECTIVE," states that "The patient has been declared disabled according to Dr. Manguoglu" (R. at 243). It is not clear from these records whether the treatment provider is stating that Dr. Manguoglu actually reported that plaintiff is disabled, or is simply noting that plaintiff made this assertion. Furthermore, a review of Dr. Manguoglu's records, which are from 1989, before the alleged onset date, do not indicate that he offered such an opinion (R. at 140-144). As noted by the ALJ in his decision, Dr. Manguoglu stated on

14

April 3, 1989 that plaintiff can lift 44 pounds occasionally and 20 pounds frequently (R. at 141, 369).

It is not at all clear from the record that Dr. Manguoglu actually offered an opinion that plaintiff was disabled.  His own records do not reflect that he offered such an opinion.  Furthermore, there is no indication of the time period regarding this allegation that plaintiff was disabled.  On these facts, the court finds that the ALJ did not err by not discussing this alleged opinion by Dr. Manguoglu.

IT IS THEREFORE ORDERED that the judgment of the Commissioner is affirmed pursuant to sentence four of 42 U.S.C. § 405(g).

Dated this 23rd day of September 2014, Topeka, Kansas.

s/Sam A. Crow
Sam A. Crow, U.S. District Senior Judge